UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:23-CV-01360

JOHN DOE, On behalf of himself and all
others similarly situated,

    Plaintiff,

v.

VGW MALTA LTD., and
VGW LUCKYLAND, INC.,

    Defendants.
_____/

### DEFENDANTS' AMENDED[1] MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS AND STAY PROCEEDINGS, OR, IN THE ALTERNATIVE, TO DISMISS VGW MALTA LTD.

Defendants VGW Malta Ltd. ("VGW Malta") and VGW Luckyland, Inc. ("VGW Luckyland" and, together with VGW Malta, the "VGW Group"), specially appearing for the purpose of this motion, hereby move to compel arbitration, strike Plaintiff "John Doe's" putative class claims and stay all further proceedings pending arbitration, or, in the alternative, to dismiss VGW Malta for lack of service.

### PRELIMINARY STATEMENT

This putative class action cannot proceed in this Court for one very simple reason: plaintiff agreed by contract to ***arbitrate*** all disputes with the VGW Group on an ***individual basis*** and expressly ***waived*** his right to bring or participate in a class action.

---

[1] This Motion is being amended and refiled due to inadvertent omission of the 3.01g conferral certification which has now been added. The Motion is otherwise identical.

1

Plaintiff claims that the VGW Group's online social casino-themed games, *Luckyland Slots* and *Chumba Casino*, are unlawful gambling under Florida law. Although Plaintiff is attempting to proceed anonymously, he concedes that he played the games. As a condition to playing the games, Plaintiff affirmatively accepted and agreed to the VGW Group's terms of use, under which he agreed to **arbitrate all disputes** with the VGW Group on an **individual basis** pursuant to the Consumer Arbitration Rules of the American Arbitration Association ("AAA"); **delegated all questions of arbitrability**, including the validity and enforceability of the arbitration agreement, to the AAA arbitrator; and expressly **waived** his right to bring or participate in a class action. Plaintiff's arbitration agreement and class action waiver is "valid, irrevocable, and enforceable," 9 U.S.C. § 2, and must be "rigorously enforce[d] . . . according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1236 (11th Cir. 2012) ("[C]lass action waiver and the arbitration clause must be enforced according to their terms."). Thus, the Court should strike Plaintiff's putative class claims and compel the individual claims to arbitration under the AAA Consumer Rules where they belong. The Court should also stay all further proceedings in this Court pending arbitration.

Alternatively, even if the Court does not compel arbitration (it must under the Federal Arbitration Act ("FAA")), the Court should dismiss the complaint as to VGW Malta for lack of service under Federal Rule of Civil Procedure 12(b)(5). There is no dispute that VGW Malta, a foreign company incorporated and headquartered in Malta, has not been served. Malta is a signatory to the Hague Convention. Thus, Plaintiff **must** effect service on VGW Malta in accordance with the Hague Convention, which he has not done.

*See Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 705 (1988) ("[C]ompliance with the Convention is mandatory in all cases to which it applies.").

## FACTUAL BACKGROUND

**I.      The Parties**

The VGW Group specializes in the development and publication of free-to-play online social casino-themed games, including the games at issue in the complaint: *Chumba Casino* and *Luckyland Slots*. *See* Declaration of Michael Thunder filed herewith ("Thunder Decl." or "Thunder Declaration") ¶¶ 3-5. VGW Luckyland operates the *Luckyland Slots* games, which are accessible to users online at www.luckylandslots.com. *Id.* ¶ 4. VGW Malta operates the *Chumba Casino* games, which are accessible to users online at www.chumbacasino.com. *Id.* ¶ 5. VGW is a Maltese company based in Malta. *Id.*

Plaintiff "John Doe," an anonymous Florida resident, alleges that he played the *Luckyland Slots* and *Chumba Casino* games on the VGW Group's websites and made multiple purchases while playing the games. Compl. ¶ 14. Plaintiff alleges that the games are unlawful gambling under Florida law. *Id.* ¶¶ 10, 68-102. Plaintiff purports to bring claims on behalf of himself and a class of all other Florida residents who made purchases playing the games over at least the last four years. *Id.* ¶¶ 60, 68-102.

**II.     To Play the Games, Users Must Agree to the VGW Group's Terms of Use, Which Include Mandatory Arbitration Clauses and Class Action Waivers**

Before a prospective user can play the *Luckyland Slots* or *Chumba Casino* games, the VGW Group requires the user to register an account. *See* Thunder Decl. ¶¶ 7, 18. As part of the account registration process, each user must affirmatively accept and agree to the Luckyland Slots Terms of Service (the "Luckyland Terms") and Chumba Casino

3

Terms and Conditions (the "Chumba Terms" and, collectively with the Luckyland Terms, the "Terms"). *Id.* ¶¶ 8-16, 19-24. Users cannot register or play any of the games unless they affirmatively accept and agree to the Terms. *Id.* ¶¶ 13, 20.

The Luckyland Terms and Chumba Terms are identical in all material respects. The Terms include a clear and conspicuous warning at the very top that states:

> These Terms [] form a binding legal agreement between you and us and apply to your use of any of our Games or our Platform in any way, through any electronic device (web, mobile, tablet or any other device).
>
> PLEASE NOTE THAT THESE TERMS [] INCLUDE A PROVISION WAIVING THE RIGHT TO PURSUE ANY CLASS, GROUP OR REPRESENTATIVE CLAIM AND REQUIRING YOU TO PURSUE PAST, PENDING, AND FUTURE DISPUTES BETWEEN YOU AND US THROUGH INDIVIDUAL ARBITRATION UNLESS YOU OPT OUT WITHIN THE SPECIFIED TIME FRAME [30 DAYS FROM ACCEPTANCE OF THE TERMS]. SEE CLAUSE 23 FOR MORE INFORMATION.

*Id.*, Exs. A, B.[2] Plaintiff does not allege that he opted out of the arbitration clause.

The Terms include an arbitration clause, which appears in a separate standalone section titled "**DISPUTE RESOLUTION AND AGREEMENT TO ARBITRATE ON AN INDIVIDUAL BASIS**." *Id.*, Exs. A, B § 23. The arbitration clause states:

> **We Both Agree to Arbitrate**. By agreeing to these Terms [], and to the extent permitted by applicable law, both you and VGW Group agree to resolve any Disputes — including any Dispute concerning the enforceability, validity, scope or severability of this agreement to arbitrate — through final and binding arbitration.

*Id.*, Ex. B, § 23.5. The arbitration clause further states that it "will be construed under and be subject to the [FAA]" and "the [AAA] will administer the arbitration under its Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes," *i.e.*, the AAA Consumer Rules. *Id.*, Exs. A, B, ¶¶ 23, 23.7(a).

---

[2] Capitalization and bold emphases are in the original unless otherwise noted.

4

In addition, the arbitration clause contains a clear and conspicuous class action waiver in a separate standalone section titled "**Waiver of Class Action and Collective Arbitration**," which states as follows:

> TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER YOU NOR VGW GROUP SHALL BE ENTITLED TO CONSOLIDATE, JOIN OR COORDINATE DISPUTES BY OR AGAINST OTHER INDIVIDUALS OR ENTITIES, OR PARTICIPATE IN ANY COLLECTIVE ARBITRATION (AS DEFINED ABOVE) OR ARBITRATE OR LITIGATE ANY DISPUTE IN A REPRESENTATIVE CAPACITY, INCLUDING AS A REPRESENTATIVE MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY OR OTHERWISE SEEK TO RECOVER FOR LOSSES INCURRED BY A THIRD PARTY. IN CONNECTION WITH ANY DISPUTE (AS DEFINED ABOVE), ANY AND ALL SUCH RIGHTS ARE HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVED.

*Id.*, Exs. A, B, ¶ 23.12.

### III. Plaintiff Agreed to the Terms, Including the Mandatory Arbitration Agreements and Class Action Waivers

Plaintiff alleges that he played the *Luckyland Slots* and *Chumba Casino* games on the VGW Group's websites and made purchases in those games. Compl. ¶ 14. Both games' registration processes required Plaintiff to affirmatively accept and agree to the Terms before he could create an account and play the games. Thunder Decl. ¶¶ 8-16, 19-24. The VGW Group does not understand Plaintiff to dispute he agreed to the Terms. And, given the way the sites are constructed, nor could he. *See infra* at 5-8.

#### A. Plaintiff Accepted and Agreed to the Luckyland Terms

As shown below and in Figure 1 of the Thunder Declaration, a business record that depicts the historical process through which Plaintiff would have registered his *Luckyland Slots* account, the initial screen in the registration process stated "No purchase necessary. By creating an account, you agree to the Terms of Service and privacy policy":

5



Thunder Decl. ¶ 8, Fig. 1.  The words "Terms of Service" are hyperlinked.  *Id.*  ¶ 9. Tapping the hyperlink opens a webpage containing the Luckyland Terms.  *Id.* ¶¶ 9-10.

Further, as shown below and in Figure 3a in the Thunder Declaration, the final screen in the registration process directs the user to confirm, in relevant part: "I confirm the following: I am at least 18 years old; I have read the Terms of Service":



6

*Id.* ¶¶ 12-13.  Once again, the words "Terms of Service" are hyperlinked, and tapping the hyperlink opens a webpage containing the Luckyland Terms.  *Id.* ¶ 13.

As shown below and in Figure 3B to the Thunder Declaration, a prospective user cannot create an account—and thus cannot play the *Luckyland Slots* games—unless he affirmatively clicks the green circle adding a checkmark next to the phrase "I confirm the following: I am at least 18 years old; I have read the Terms of Service":

 

*Id.* ¶¶ 13-16.  The Luckyland Terms to which Plaintiff agreed include the arbitration clause and class action waiver discussed above.  *Id.*, Ex. A.

      **B.**    **Plaintiff Accepted and Agreed to the Chumba Terms**

The flow through which Plaintiff registered his *Chumba Casino* account closely tracks the flow through which he registered his *Luckyland Slots* account.

As shown below and in Figure 4 in the Thunder Declaration, the final screen in the registration process directs the registering user to confirm: "I confirm the following: I am at least 18 years old; I agree to the **Terms of Use** and Privacy Policy":



*Id.* ¶ 19.  The words "**Terms of Use**" are hyperlinked, and tapping the hyperlink opens a webpage containing the Chumba Terms.  *Id.* ¶ 20, 24.  Plaintiff could not register his *Chumba Casino* account (or play games) unless he affirmatively selected the checkbox confirming "I agree to the **Terms of Use**" and also clicked the "CREATE AN ACCOUNT" button at the bottom of the screen.  *Id.* ¶¶ 18, 22-23.

The Chumba Terms to which Plaintiff agreed include the arbitration clause and class action waiver discussed above.  *Id.*, Ex. B.

**ARGUMENT**

I. **The Court Should Compel Arbitration, Strike the Class Claims, and Stay all Further Proceedings in this Court Pending Arbitration**

Under the FAA, the Court must enforce Plaintiff's agreement to the arbitration clause and class action waiver in the Terms by compelling arbitration of Plaintiff's individual claims, striking the putative class claims from the complaint, and staying all further proceedings in this Court, including discovery, pending arbitration.

### A.     Plaintiff Agreed to Mandatory Arbitration under the AAA Rules

The FAA reflects a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-46 (2011), and requires courts to compel arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue," 9 U.S.C. § 4; *see also Italian Colors Rest.*, 570 U.S. at 233 ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms."). As the party opposing arbitration, Plaintiff bears the burden of disproving that he agreed to arbitration. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000); *Martin v. Cach, LLC*, 2015 WL 13333175, at *1 (M.D. Fla. 2015) (same). In evaluating a motion to compel arbitration, courts may consider extrinsic evidence such as declarations. *Samadi v. MBNA Am. Bank, N.A.*, 178 Fed. Appx. 863, 866 (11th Cir. 2006).

Plaintiff agreed to arbitration with the VGW Group under the AAA Consumer Arbitration Rules and delegated all issues regarding the arbitrability of his claims, including the enforceability, validity, or severability of the arbitration agreement itself, to the arbitrator. *See supra* at Section II. Indeed, Plaintiff would have been presented with an express statement as part of the *Luckyland Slots* registration advising him that "[b]y creating an account, you agree to the Terms of Service," and he could not have played or made any purchases in the games unless he affirmatively checked the green circle next to the phrase "I confirm the following: I am at least 18 years old; I have read the Terms of Service," and then clicked the "Create Account" button. *See supra* at Section II. Similarly, Plaintiff could not have played or made any purchases in the *Chumba Casino* games unless he affirmatively clicked the checkbox next to the phrase "I confirm the following: I am at least 18 years old; I agree to the **Terms of Use**," and then clicked the "CREATE AN ACCOUNT" button. *See supra* at Section II.

These click-through processes for indicating consent to the Terms are referred to as a "clickwrap agreements" because they "require[] a computer user to read the agreement and click 'I accept' before proceeding to the next screen or obtaining additional information." *Salco Distribs., LLC v. iCode, Inc.*, 2006 WL 449156, at *2 n.5 (M.D. Fla. 2006); *see also Sabino v. Kerzner Int'l Bahamas Ltd.*, 2014 WL 11878359, at *2 n.3 (S.D. Fla. 2014) ("[T]he agreement at issue was a clickwrap agreement, as the online reservation could not be submitted unless the guest checks a box confirming that she has read and understood the terms and conditions, which are provided above the checkbox."); *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1190 n.3 (S.D. Fla. 2021) (defining "clickwrap" agreement as one that "directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions."). Under well-established Florida and Eleventh Circuit law, "clickwrap agreements are valid and enforceable contracts." *Salco Distribs.*, 2006 WL 449156, at *2; *see also Siedle v. Nat'l Ass'n of Secs. Dealers, Inc.*, 248 F. Supp. 2d 1140, 1143 (M.D. Fla. 2002) (same).

Courts routinely enforce arbitration clauses in online terms of service presented in "clickwrap" agreements. *See, e.g., AMC Pinnacle, Inc. v. Jeunesse, LLC*, 2018 WL 6267314, at *2 (M.D. Fla. 2018) (enforcing arbitration agreement in clickwrap terms of service); *Solis v. Am. Express Nat'l Bank*, 2023 WL 4474322, at *6 (M.D. Fla. 2023) (same); *Healy v. Honorlock Inc.*, 609 F. Supp. 3d 1294, 1298 (S.D. Fla. 2022) (same); *Valiente v. StockX, Inc.*, 2022 WL 17551090, at *4 (S.D. Fla. 2022) (same); *Barney v. Grand Caribbean Cruises, Inc.*, 2022 WL 159567, at *1 (S.D. Fla. 2022) (same).

The Eleventh Circuit's decision in *JPay, Inc. v. Kobel* is particularly instructive. 904 F.3d 923 (11th Cir. 2018). There, the terms of service at issue—like the Terms here—stated that "any and all disputes, claims, or controversies will be resolved" under the AAA Consumer Arbitration Rules, which the court held "serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator." *Id.* at 936. The court also noted that the terms of service expressly delegated all questions of arbitrability to the arbitrator, which was an "independent[]" basis to find that the claims had to be sent to arbitration. *Id.* And, finally, the court noted the arbitration clause "was written in unmistakably broad terms, as the parties agreed 'to arbitrate *any and all* such disputes, claims and controversies.'" *Id.* (emphasis in original).

Here, Plaintiff agreed in the Terms to "resolve *any* Disputes – including any Dispute concerning the enforceability, validity, scope or severability of this agreement to arbitrate – through final and binding arbitration" under the AAA Consumer Arbitration Rules. Thunder Decl., Ex. A § 23.5. Moreover, the Terms broadly define "Disputes" to include "*any and all* past, present and future disputes, claims or causes of action arising out of or relating to these Terms, the Platform, the formation of these Terms or any other dispute between you and VGW Group[.]" *Id.* § 23.1. Thus, because Plaintiff agreed to submit *all* his disputes with the VGW Group to arbitration on an individual basis under the AAA Consumer Rules and delegated *all* questions of arbitrability—including the "*enforceability, validity, scope or severability*" of the arbitration agreement itself (*id.* § 23.5)—to the arbitrator, the Court should compel Plaintiff to submit his claims to arbitration where they belong. *JPay*, 904 F.3d at 940.

### B.     Plaintiff's Expected Rejoinder is Without Merit

Based on conversations with Plaintiff's counsel, the VGW Group expects Plaintiff to argue that his claims are not subject to arbitration because the Terms allegedly are a void gambling contract under Florida law. This argument fails.

Under well-established Supreme Court and Eleventh Circuit precedent, Plaintiff cannot avoid the arbitration agreement in the Terms by challenging the validity or legality of the Terms generally. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (rejecting argument that claim was not arbitrable based on challenge to "the validity of the contract as a whole," which was a question "for the arbitrator"); *Bess v. Check Express*, 294 F.3d 1298, 1304-05 (11th Cir. 2002) (rejecting argument that claim was not arbitrable because contract was "void *ab initio*" due to alleged illegality, since the "illegality" challenge went to the contract "generally, and not to the arbitration agreement specifically"); *John B. Goodman L.P. v. THF Constr., Inc.*, 321 F.3d 1094, 1095-97 (11th Cir. 2003) (whether "contract generally was unenforceable under Florida law" was a question "for the arbitration panel, not the district court," because "arbitration clauses [are] separable from the contracts in which they were included"); *see also Oxium LLC v. OXO H2O Sols., Inc.*, 2023 WL 3510904, at *2 (M.D. Fla. 2023) (granting motion to compel arbitration because "[i]t is clear the parties mutually assented to arbitrate their disputes, so questions about the validity or terms of their agreement are questions for the arbitrator.").

Moreover, the Terms expressly delegate to the arbitrator the authority to decide all issues of arbitrability, including the "enforceability, validity, scope or severability" of the arbitration agreement. Thunder Decl., Ex. A § 23.5. And even if the Terms did not include

12

that express delegation provision, the Terms provide for arbitration under the AAA Consumer Arbitration Rules, which independently grant the arbitrator jurisdiction to rule on all issues of arbitrability, including the validity of the Terms:

> The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

AAA Consumer Arbitration Rules, R-14(b);[3] *see also JPay*, 904 F.3d at 936 ("Under controlling Circuit precedent," statement in terms of service that disputes must be resolved by arbitration under the AAA Consumer Arbitration Rules "alone serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator.").

The Eleventh Circuit has held that "[w]hen an arbitration agreement contains a delegation provision and the plaintiff raises a challenge to the contract **as a whole**, the federal courts may not review his claim because it has been committed to the power of the arbitrator." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (emphasis in original). "Instead, the plaintiff must 'challenge[ ] the delegation provision **specifically**.'" *Id.* (emphasis in original) (quoting *Rent-A-Ctr.*, 561 U.S. at 72). "[A]bsent a challenge to the delegation provision itself, the federal courts must treat the delegation provision 'as valid' and '"must enforce it under [FAA] §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."' *Id.*, at 1146-47 (quoting *Rent-A-Ctr.*, 561 U.S. at 72); *Rimel v. Uber Techs., Inc.*, 246 F. Supp. 3d 1317 (M.D. Fla. 2017) (same) (quoting *Parnell*, 804 F.3d at 1146)).

---

[3] *Available at* https://adr.org/sites/default/files/Consumer-Rules-Web_0.pdf

Here, the Plaintiff does not and cannot challenge the validity of the delegation clause specifically. Therefore, under Supreme Court and Eleventh Circuit precedent, the *arbitrator* must rule on Plaintiff's claim that the Terms are a void gambling contract under Florida law, not the Court. *See Bess*, 294 F.3d at 1306 (question of whether the contract and transactions "are void as illegal" is "one for the arbitrator, not the court").

Finally, Plaintiff's argument, if accepted, would render the arbitration agreement without effect. Under Plaintiff's own theory, the Terms are not and cannot be void if the *Luckyland Slots* and *Chumba Casino* games are not unlawful "gambling" under Florida law. Plaintiff's entire case rests on his ability to prove the games are unlawful "gambling." Plaintiff cannot avoid arbitration by ***assuming his entire case***. *Jones v. Waffle House, Inc.*, 866 F.3d. 1257, 1269-70 (11th Cir. 2017) ("[W]hen parties agree to submit an issue to arbitration, courts are bound to effectuate the parties' intent by compelling arbitration—no matter what the court thinks about the merits of the issue."). Under the parties' arbitration agreement, whether the games are unlawful gambling (they are not) is plainly a question for the *arbitrator*, not this Court.

### B.  The Class Action Waivers Require that the Class Claims Be Stricken

In addition to compelling arbitration, the Court should strike Plaintiff's putative class claims because Plaintiff "EXPRESSLY AND UNCONDITIONALLY WAIVED" his right to "ARBITRATE OR LITIGATE ANY DISPUTE" against the VGW Group "IN A REPRESENTATIVE CAPACITY, INCLUDING AS A REPRESENTATIVE MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY[.]" Thunder Decl. Ex. A, ¶ 23.12, Ex. B, ¶ 23.12.

The Supreme Court and Eleventh Circuit have repeatedly upheld the enforceability of class action waivers in arbitration clauses. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct.

1612, 1621 (2018) (FAA protects parties' expressed intention in arbitration agreement "to use individualized rather than class or collective action procedures"); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58-59 (2015) (FAA preempts state law invalidating class action waivers); *see also Pendergast*, 691 F.3d 1224, at 1236 ("[C]lass action waiver and the arbitration clause must be enforced according to their terms.").

To give effect to class action waivers, courts routinely strike or dismiss putative class claims asserted in contravention of those waivers. *See, e.g.*, *Phillips v. NCL Corp. Ltd.*, 824 Fed. App'x 675, 680 (11th Cir. 2020) (affirming dismissal of class allegations where claims fell within the scope of the arbitration provision that contained a class action waiver); *Suarez v. Uber Techs., Inc.*, 2016 WL 2348706, at *5 (M.D. Fla. 2016) (granting motion to strike class claims where arbitration clause included a class action waiver); *Rimel v. Uber Techs., Inc.*, 2016 WL 6246812, at *8 (M.D. Fla. 2016) (same), *aff'd and adopted*, 246 F. Supp. 3d 1317 (2017).

This Court should do the same here.

### C. The Court Should Stay all Further Proceedings in this Court

The FAA "require[s] a court to stay a proceeding where the issue in the proceeding 'is referable to arbitration under an agreement in writing for such arbitration.'" *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (quoting 9 U.S.C. § 3); *see also Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration.").

Because Plaintiff's claims must be submitted to arbitration, this Court should stay all proceedings in this Court, including discovery, while the arbitration is pending. *See*

*Tarverdiyeva v. Coinbase Glob., Inc.*, 2021 WL 4527960, at *1-2 (M.D. Fla. 2021) ("[T]he Court stays this action pending completion of arbitration" where arbitration clause in terms of service provided that "any dispute arising under this [User Agreement] shall be finally settled in binding arbitration, on an individual basis, in accordance with the [AAA's] rules for arbitration of consumer-related disputes.").

## II.     At a Minimum, the Court Should Dismiss VGW Malta for Lack of Service

Even if the Court were to find that Plaintiff's claims are not subject to arbitration (they most certainly are), the Court should, at a minimum, dismiss VGW Malta for lack of service under Rule 12(b)(5).  There is no dispute that VGW Malta has not been served with the summons and complaint.  *See* ECF Doc. 1-2.  VGW Malta is incorporated and headquartered in Malta, which is a signatory to the Hague Convention.  Thus, Plaintiff ***must*** effect service on VGW Malta through the Hague, which he has not done.  *See Schlunk*, 486 U.S. at 705 ("[C]ompliance with the Convention is mandatory in all cases to which it applies.").  Therefore, the complaint should be dismissed as to VGW Malta.  *See Turner v. MSC Cruise Mgmt. (UK) Ltd.*, 2022 WL 539298, at *2 (S.D. Fla. 2022) (granting motion to dismiss complaint against Maltese company headquartered in Malta where service not made under the Hague Convention).

## CONCLUSION

For the reasons set forth above, the Court should enter an order compelling arbitration of Plaintiff's individual claims, striking the class claims, and staying all further proceedings in this Court pending arbitration.  If the Court does not enter such an order, the Court should, at a minimum, dismiss VGW Malta for lack of service.

16

## LOCAL RULE 3.01(G) CERTIFICATION

Counsel for Defendant VGW Luckyland conferred with opposing counsel via telephone and email but the parties were unable to reach agreement, and Plaintiff opposes this motion.

Dated:  July 26, 2023

Respectfully Submitted,

*/s/ T. Todd Pittenger*
T. Todd Pittenger – Lead Counsel
Florida Bar No. 768936
todd.pittenger@gray-robinson.com
Kelly J. H. Garcia
Florida Bar No. 0694851
kelly.garcia@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Orlando, Florida 32801
(407) 843-8880 Tel/(407) 244-5690 Facsimile

Gregory D. Beaman (*pro hac vice*)
gbeaman@orrick.com
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Tel. 212-506-5000/ Fax: 212-506-5151

Behnam Dayanim (*pro hac vice*)
Bdayanim@orrick.com
Orrick, Herrington & Sutcliffe LLP
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Tel. 202-339-8613

*Counsel for Defendants VGW Malta Ltd. and VGW Luckyland, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of July 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve a copy via email to Plaintiff's counsel: Dennis Wells, Webb & Wells, P.A., P.O. Box 915432, Longwood, FL 32779, denniswells2@icloud.com.

    */s/ T. Todd Pittenger*
T. Todd Pittenger, Esq.
*Counsel for Defendants VGW Malta Ltd. and VGW Luckyland, Inc.*